[Civ. No. 3109.    First Appellate District, Division One.—November 15, 1919.]

## T. W. LA FETRA, Appellant, v. C. W. RICHARDSON et al., Respondents.

[1] APPEAL—ABSENCE OF BILL OF EXCEPTIONS—EVIDENCE—PRESUMPTIONS.—Where an appeal is taken on the judgment-roll alone, the appellate court must assume that the evidence presented in support of the findings of the trial court was competent to establish the facts alleged, that it was received without objection, and that it was sufficient to sustain each of the facts found.

[2] WATERS AND WATER RIGHTS—NATURAL FLOW OF SURFACE WATERS —EASEMENT.—Where two parcels of land belonging to different owners are adjacent to each other, and one is lower than the other, and the surface water from the higher tract has been accustomed by a natural flow to pass over the lower tract, the owner of such upper tract of land has an easement to have the water flow over the land below, and the lower tract is charged with a corresponding servitude.

[3] ID.—BURDEN OF RECEIVING SURFACE WATERS.—Every land owner must bear the burden of receiving on his land the surface water naturally falling upon land above it, and naturally flowing to it therefrom.

[4] ID.—DIVERSION OF SURFACE WATERS—RIGHT OF UPPER OWNER LIMITED.—The owner of the higher land has no right, for his own relief, either to divert surface or storm waters from his lands on to the lands of another, over which they would not naturally have flowed, nor has he the right by accumulating the surface waters upon his own lands, in ditches, or other like artificial channels, to precipitate them upon his neighbor's land in larger quantities, or in a different form from that which they would have taken in the course of nature.

[5] ID.—CONFINING WATER TO ONE CHANNEL—RIGHTS OF LOWER OWNER NOT INVADED.—When the owners of the upper tract, in a

---

2. Prescriptive rights as to flow of surface water, note, 21 L. R. A. 607.

reasonable manner, and for the purpose of cultivation, and improvement of their own land, confine the surface, or flood waters, flowing down upon their tract, through natural courses, into one channel, and carry the same in substantially the same channel in which the water flowed naturally across their land, without increasing the volume of water therein, they work no invasion of the rights of the lower owner. The burden on his property is not increased thereby.

[6] ID.—METHOD EMPLOYED IN DISCHARGING WATER IMMATERIAL.— The right to discharge surface, or . flood waters, upon the land of the lower owner has nothing to do with the particular method employed by the owner of the upper tract in discharging the water, so long as it in no way imposes an additional burden on the lower owner.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

John E. Daly and James H. Daly for Appellant.

Porter, Morgan & Parrot and R. B. Bidwell for Respondents.

WASTE, P. J.—Plaintiff claims that the defendants have greatly injured his orange orchard by wrongfully diverting thereon large quantities of storm water. He seeks an injunction, and prays for damages. Defendants had judgment and plaintiff appeals on the judgment-roll alone.

Plaintiff is the owner of an orange orchard on the southerly slope of the Sierra Madre Mountains. Just north of the land of plaintiff, and separated therefrom by Ledora Avenue, are the lands of defendants. Located in these mountains is a deep ravine, known as Shorey-Canyon, which, with its many branches, constitutes the natural drainage-way of waters falling in said locality. In the year 1914 defendants constructed in this ravine, on their land, a concrete flume about five and one-half feet in width and about three and one-half feet in depth, with a fall of about ninety feet in a distance of 1,320 feet. Plaintiff seeks to have this flume declared a nuisance, and removed, and the ditch in which it is constructed filled to its natural level and grade.

The complaint alleges that prior to the construction of the flume the waters falling from the slopes of the mountains, and naturally draining into Shorey Canyon, flowed therein down to a point of discharge on defendants' land, and from thence spread out and were widely diffused over the surface of the ground, falling in no definite channels, in a southeasterly direction over the lands of the defendants and other lands, without in any wise injuring or damaging the lands of plaintiff; but that since the construction of the flume by the defendants, these storm waters have accumulated therein, and have been prevented thereby from becoming spread out, or diffused over the surface of the land, and from flowing, as they naturally would have done, without injuring or damaging the lands of plaintiff, but have been cast in a single volume, and in greatly increased quantities upon, and across, the lands of the plaintiff. It is further alleged that during the months of January and February, 1916, heavy rains fell generally in this locality, and great volumes of water flowed out of Shorey Canyon through the flume constructed by defendants, and were accumulated, and carried in a single volume, and diverted to, and across, the lands of the plaintiff, cutting a ravine therein to a depth varying from three to twelve feet, and to a width of ten to thirty feet; and carrying away large quantities of the land, uprooting and carrying away many of the orchard trees located thereon, leaving more than two acres of the land unfit for cultivation; and greatly injuring and damaging other portions of the orchard by depositing large quantities of rock and debris thereon.

The lower court found that plaintiff's orchard suffered the injury alleged. It further found that for many years prior to the commencement of the action, and before the cultivation of plaintiff's land, and at a time, and during a period, when all of the land thereabout was in a state of nature, there had been, and was, a natural course, or channel, leading out of Shorey Canyon and continuing across the lands of the defendants, over Ledora Avenue and across the land of the plaintiff, which channel carried the natural flow of storm water, flowing from said canyon over defendants' land, across Ledora Avenue, and thence over the land of plaintiff; that plaintiff had at all times accepted said water, and made provision for the disposal thereof, by the

erection of bulkheads and dams across the north line of his property, and on Ledora Avenue, for the purpose of turning and diverting said water from his land, and causing it to flow along that highway. It further found that the flume constructed by the defendants, and complained of by plaintiff, was laid in and followed the identical course of this natural channel and did not accumulate any water other than that naturally flowing therein, and did not divert or change in any way the natural flow of the water over and across plaintiff's land. There was a further finding to the effect that the concrete ditch, or flume, constructed by the defendants was constructed for the purpose of taking the place, and supplanting, an artificial ditch or flume of smaller dimensions, that had been previously constructed and maintained in identically the same place for many years; that the new flume, although larger in size than the old one, did not accumulate, or gather, storm water, flood water, or water from any source on defendants' land, or elsewhere, in any larger amount than was gathered by the former ditch and did not augment or increase the amount, or volume, of storm water previously carried in the flume, and in the natural channel, to and across the lands of plaintiff, but that the water was discharged on the highway of Ledora Avenue, as at all times prior thereto, and thence flowed to plaintiff's premises.

[1] In the absence of any bill of exceptions it must be assumed that the evidence presented in support of the foregoing findings was competent to establish the facts alleged, and was received without objection, and was sufficient to sustain each of the facts found. (*Cutting Packing Co.* v. *Canty,* 141 Cal. 692, 695, [75 Pac. 564]; *Damon* v. *Quinn,* 143 Cal. 75, 77, [76 Pac. 818].)

[2] Where two parcels of land belonging to different owners are adjacent to each other, and one is lower than the other, and the surface water from the higher tract has been accustomed by a natural flow to pass off over the lower tract, the owner of such upper tract of land has an easement to have the water flow over the land below, and the lower tract is charged with a corresponding servitude. (*Ogburn* v. *Connor,* 46 Cal. 346, 352, [13 Am. Rep. 213]; *Los Angeles Cemetery Assn.* v. *Los Angeles,* 103 Cal. 461, 467, [37 Pac. 375].)  [3]  Every land owner must bear the burden of re-

ceiving on his land the surface water naturally falling upon land above it, and naturally flowing to it therefrom. (*Heier* v. *Krull*, 160 Cal. 441, 444, [117 Pac. 530].) [4] It is equally well settled that the owner of the higher lands has no right, for his own relief, either to divert surface or storm waters from his lands on to the lands of another, over which they would not naturally have flowed, nor has he the right by accumulating the surface waters upon his own lands, in ditches, or other like artificial channels, to precipitate them upon his neighbor's land in larger quantities, or in a different form from that which they would have taken in the course of nature. [5] When, however, the owners of the upper tract, in a reasonable manner, and for the purpose of cultivation and improvement of their own land, confine the surface, or flood waters, flowing down upon their tract, through natural courses, into one channel, and carry the same in substantially the same channel in which the water flowed naturally across their land, without increasing the volume of water therein, they work no invasion of the rights of the lower owner. The burden of his property is not increased thereby. (*Wood* v. *Moulton*, 146 Cal. 317, 319, [80 Pac. 92].) The lower court's findings bring the case at bar squarely within the law of these decisions and support the judgment entered herein.

[6] The trial court also found that the respondents had acquired a right by prescription to discharge the water upon the land of plaintiff. Appellant contends that, if such right existed, it was a right only to maintain the first ditch, and was abandoned by the construction and maintenance of the larger concrete flume. We are not impressed with the contention. The right which the respondents had arose from the easement to discharge the storm waters naturally flowing through their land on to the highway adjacent to and lower than their land, and thence over plaintiff's land if necessary, a right which plaintiff could neither interrupt or prevent. (*Los Angeles Cemetery Assn.* v. *Los Angeles, supra.*) It had nothing to do with the particular method employed by respondents in discharging this water, so long as it in no way imposed an additional burden on plaintiff.

The judgment of the lower court is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 12, 1920.

All the Justices concurred, except Wilbur, J., who was absent.